UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 12-03632-DMG (CWx)** | Date | May 17, 2013 |
| Title | *Roger Kalaouz and Associaties s.a.r.l., et al.. v. Calvin Broadus, et al.* | Page | 1 of 8 |

Present: DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS' MOTION TO DISMISS [DOC. # 28]**

## I.
## INTRODUCTION

Plaintiffs Roger Kalaouz and Roger Kalaouz & Associates ("RKA"), S.A.R.L. filed the operative Second Amended Complaint ("SAC") on November 14, 2012 [Doc. # 26] against Defendants Calvin Broadus ("Snoop"), Ted Chung, and Doggy Style Music, Inc. ("DSM") raising claims for (1) breach of oral contract; (2) fraud; (3) intentional interference with economic advantage; (4) negligent interference with economic advantage; and (5) unauthorized use of a likeness under Cal. Civ. Code § 3344(a).

On November 30 2011, Defendants filed a motion to dismiss [Doc. # 28]. On December 14, 2012, Plaintiffs filed their opposition, and on December 21, 2012, Defendants filed a reply. [Doc. ## 29, 30.] Thereafter, the Court took the matter under submission because it deemed the matter appropriate for decision without oral argument [Doc. # 31]. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## II.
## FACTUAL ALLEGATIONS

On August 20, 2009, Snoop performed a concert in Beirut, Lebanon, promoted by RKA as per a written agreement between RKA and DSM. (SAC ¶ 6.) The concert was his first appearance in the Middle East. (*Id.*) After the concert, Snoop made an appearance at Sky Bar, parts of which were featured in Snoop's music video for "That's Tha Homie," including images of Kalaouz and scenes with Snoop conspicuously smoking marijuana. (SAC ¶ 7.) Kalaouz did not consent to the use of his image. (*Id.*) Since the appearance, Plaintiffs allege that they have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 12-03632-DMG (CWx)** | Date | May 17, 2013 |
| Title | *Roger Kalaouz and Associaties s.a.r.l., et al.. v. Calvin Broadus, et al.* | Page | 2 of 8 |

faced a loss of business as well as injury to their reputations, and have had trouble with the Lebanese government. (*Id.* ¶ 8.)

Plaintiffs also allege that in August 2009, Snoop and DSM orally agreed to pay RKA a consulting fee to represent them in the Middle East, to solicit live engagements, collaborations with Middle Eastern artists, and corporate endorsements (the "Consulting Agreement"). While agreeing to this representation, Defendants failed to disclose that they had previously authorized William Morris Endeavor ("WME") to act as their Middle East representative. (*Id.* ¶ 9.) Relying on Defendants' authorization, RKA entered into negotiations on Snoop's behalf for recording and performance collaboration with Middle Eastern artists Haifa Wehbe, Tamer Hosny Abbass, and Joe Ashkar. (*Id.* ¶¶ 11-15.) Due to these negotiations, Snoop did collaborate with Wehbe and Abbass in 2010 and 2011. (*Id.* ¶¶ 16, 18.) Plaintiffs allege that they had separate agreements to represent Wehbe and Abbass, which Defendants knew about. (*Id.* ¶¶15, 17.) Plaintiffs further allege that after the collaborations, Defendants concealed information about the collaborations from Plaintiffs in an attempt to avoid paying Plaintiffs the consulting fees. (*Id.* ¶ 19.)

Plaintiffs allege that they have not been paid the consulting fees that Defendants owe them. (*Id.* ¶ 20.) Plaintiffs further allege that they suffered damages to their standing and reputation. (*Id.* ¶¶ 14, 20.)

### III.
### DISCUSSION

As a preliminary matter, Defendants raise for the first time in their reply brief the affirmative defense that, as a foreign corporation transacting intrastate in California, RKA must have obtained a certificate of qualification from the California Secretary of State. Cal. Corp. Code § 2105; *United Med. Mgmt. Ltd. v. Gatto*, 49 Cal. App. 4th 1732, 1740, 57 Cal. Rptr. 2d 600 (1996). Without considering the merits of this defense, the Court notes that Defendants may not raise for the first time a defense that was not raised in their initial motion to dismiss or, for that matter, in this motion prior to the reply brief. Fed. R. Civ. P. 12(g)(2). Therefore, the Court does not address the merits of this late-blooming defense.

A.  **RKA Adequately States a Claim for Breach of Oral Contract**

As discussed in the Court's October 30, 2012 Order Re: Defendants Motion to Dismiss ("10/30/12 Order") [Doc. # 25], Plaintiffs have properly alleged the four elements of a breach of contract claim: (1) a contract, (2) plaintiff's performance, (3) defendant's breach, and (4)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 12-03632-DMG (CWx)** | Date | May 17, 2013 |
| Title | *Roger Kalaouz and Associaties s.a.r.l., et al.. v. Calvin Broadus, et al.* | Page | 3 of 8 |

damages. (10/30/12 Order at 8.) In this motion, Defendants raise a new issue: the fact of RKA's contracts with Wehbe, Abbass, and Ashkar. Defendants argue that because RKA had these contracts without Defendants' knowledge, it is a "double agent," relieving Defendants of their burden to perform under the contract.

Under the theory of double agency, a principal that represents two parties in a negotiation cannot collect fees from either without their knowledge and consent, regardless of whether the principal acted in good faith. 3 B.E. Witkin, *Summary of California Law* § 730 (10th ed. 2010); *Gordon v. Beck*, 196 Cal. 768, 773 (1925) ("It makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith; the double agency is a fraud upon the principal and he is not bound. . . . The law will not tolerate such a dual agency without the knowledge and consent of both principals." (internal citations omitted)).

Defendants assert that "[n]owhere in the SAC [do Plaintiffs] allege that Snoop assented to RKA's representation of Wehbe and Abbas." (Mot. at 4.) This is incorrect. Plaintiffs have asserted in their Complaint that Defendants "knew or should have known" that RKA had separate business relationships with Wehbe and Abbass (SAC ¶¶ 15, 17, 39-40). Plaintiffs also assert that RKA began negotiating with the Middle Eastern artists about collaboration "with full knowledge and approval of Snoop and Chung." (SAC ¶ 11.) At this early stage, the Court must construe the facts in Plaintiff's favor, and must assume Snoop's approval and knowledge of the relationships as alleged.

Defendants may argue in a later motion or at trial that RKA breached a fiduciary duty to them as a factual matter, but in the absence of relevant facts and supporting case law, the Court cannot conclude at this stage of the proceedings that RKA breached a fiduciary duty as a matter of law such that Defendants would be relieved from contract performance.

### B.  RKA Adequately States a Claim for Fraud

Defendants challenge RKA's claim for fraud on the ground that Defendants' alleged fraud worked to RKA's benefit and, therefore, RKA could not have detrimentally relied on Defendants' conduct:

> The SAC implies that RKA detrimentally relied on Defendants' alleged false representations by developing and negotiating the opportunities in the Middle East for Snoop. However, the allegations in the SAC confirm that RKA actually benefitted from its alleged reliance on Defendants' alleged promise that RKA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 12-03632-DMG (CWx)** | Date | May 17, 2013 |
| Title | *Roger Kalaouz and Associaties s.a.r.l., et al.. v. Calvin Broadus, et al.* | Page | 4 of 8 |

would be Snoop's exclusive agent in the Middle East, because RKA negotiated deals with third parties (i.e., Wehbe and Abbass) which brought RKA economic benefit.

This argument is flawed. First, detrimental reliance can co-exist with economic benefit. Detrimental reliance merely requires that RKA has expended resources or effort, or otherwise acted to its own detriment, in reliance on Defendants' representations, regardless of eventual outcome. Second, Defendants incorrectly assume that the loss of standing and reputation do not, as a factual matter, outweigh any economic benefit RKA may have gained by negotiating on Defendants' behalf.[1] Third, Defendants merely assume that RKA's deals with third parties brought it economic benefit—that is not a fact alleged in the SAC. At trial or in a dispositive motion, Defendants may argue for the purpose of damages that their alleged misrepresentations did not harm RKA.

### C. RKA Adequately States Claims for Intentional and Negligent Interference with Prospective Economic Advantage

In the 10/30/12 Order, the Court dismissed RKA's interference claims with leave to amend, because RKA did not allege that there was a third party relationship with which Defendants interfered. (10/30/12 Order at 14.) RKA has cured these defects. In the SAC, Plaintiffs allege that "Defendants knew or should have known that RKA had a separate business relationship with Wehbe [and] Abbass." (SAC ¶¶ 39-40.) This statement implies that RKA's business relationships with Wehbe and Abbass predated the Consulting Agreement. Read in conjunction with this later statement, the allegation that RKA first contacted Wehbe and Abbass based on Defendants' representations does not imply that it was the beginning of RKA's relationship with those artists, but rather that this was the first contact made regarding collaboration with Snoop. (SAC ¶ 11.)

Defendants argue that they cannot be liable for interference because they are not "third-party strangers" to RKA's contracts with Wehbe and Abbass, but rather, had a financial stake in them. The California Supreme Court last addressed the "third-party stranger" principle in *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514, 869 P.2d 454, 459 (1994). The *Applied Equipment* court stated that

> California recognizes a cause of action against *noncontracting parties* who interfere with the performance of a contract. It has long been held that *a stranger*

---

[1] In fact, Defendants entirely ignore Plaintiffs' claims for loss of standing and reputation in arguing that Plaintiffs have not alleged any damages besides nonpayment of damages for breach of contract.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-03632-DMG (CWx)** | Date | May 17, 2013 |
|---|---|---|---|

| Title | *Roger Kalaouz and Associaties s.a.r.l., et al.. v. Calvin Broadus, et al.* | Page | 5 of 8 |
|---|---|---|---|

> *to a contract* may be liable in tort for intentionally interfering with the performance of the contract. However, consistent with its underlying policy of protecting the expectations of contracting parties against frustration *by outsiders* who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with contract does not lie against a party to the contract. . . . The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance.

*Id.* at 513-514 (emphasis in original, internal citations omitted). The *Applied Equipment* court, however, was faced only with the question of whether a party to a contract could interfere with that contract. *Id.* at 514. Because the facts of the case related to a contracting party, that a "stranger" must be a noncontracting party was a mere minimum requirement, and the question of whether a noncontracting party with a financial interest could be a stranger was not at issue.

In *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825 (9th Cir. 2001), the Ninth Circuit articulated its understanding of California's third-party stranger principle, without reference to *Allied Equipment*: "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party stranger to that relationship, so that an entity with a *direct interest or involvement in that relationship* is not usually liable for harm caused by pursuit of its interests." *Id.* at 832 (citing *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal.4th 376, 45 Cal.Rptr.2d 436 (1995), *Hamro v. Shell Oil*, 674 F.2d 784, 790 (9th Cir.1982), and *Exxon Corp. v. Superior Court*, 51 Cal. App. 4th 1672, 60 Cal.Rptr.2d 195, 205 (1997)) (emphasis added).

A few years later, a California appellate court examined the apparent conflict between *Marin Tug* and the California Supreme Court's holding in *Applied Equipment*. *Woods v. Fox Broad. Sub., Inc*., 129 Cal. App. 4th 344, 355, 28 Cal. Rptr. 3d 463, 472 (2005). The *Woods* court observed that in *Applied Equipment*, the court used the phrases "outsiders who have no legitimate social or economic interest in the contractual relationship" and "stranger to a contract" to mean the same thing: a non-contracting party, *id.* at 353, whereas the *Marin Tug* court concluded that "direct interest or involvement" in the relationship was enough to foreclose third-party stranger status. 271 F.3d at 832. As the court in *Fresno Motors, LLC v. Mercedes-Benz USA, LLC*, 852 F. Supp. 2d 1280 (E.D. Cal. 2012), concluded, however, the *Woods* court simply read *Applied Equipment* not to have overturned the line of cases "that owners or officers of a business entity could be held liable for interference with that entity's contracts, subject to the defense of privilege." *Id.* at 1298. This means that in the corporate context, according to *Woods*, the owners or officers were "strangers" enough to be held liable for interference, but that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.    **CV 12-03632-DMG (CWx)**                                Date    May 17, 2013

Title    *Roger Kalaouz and Associaties s.a.r.l., et al.. v. Calvin Broadus, et al.*    Page    6 of 8

situation does not apply here. The *Woods* court did not read *Applied Equipment* to hold that *any* nonparty to a contract can be liable for third party interference. This Court similarly declines to do so, instead applying the law as set forth in *Marin Tug*, that a stranger is someone without a "direct interest or involvement" in the relationship. 271 F.3d at 832.

California law is not clear, however, about the *degree* of interest or involvement that causes a non-contracting party to be foreclosed from being "a stranger" to a contract. *See* 852 F. Supp. 2d at 1299. The *Fresno Motors* court reasoned that a "defendant has a 'direct interest' in a business relationship when the underlying contract cannot exist without the defendant's participation or cooperation, or when the defendant stands to benefit from the contract's performance." *Id.* at 1295 (citations omitted). In *Ford Motors*, the court found that Mercedes Benz had a "substantial, continuing interest that was contractually and statutorily protected," and thus was not a stranger. *Id.* at 1298.

Here, Defendants argue that they cannot be strangers because they were necessary parties to RKA's contracts with Wehbe and Abbass and stood to benefit from them. The allegations of the complaint, however, are unclear. The SAC alleges both that RKA had preexisting contracts with Wehbe and Abbass (SAC ¶¶15, 17) and that RKA created new contracts with them for the purpose of working with Snoop (SAC ¶¶ 39, 40). The SAC is ambiguous as to the specific contracts with which Defendants allegedly interfered. To the extent the SAC claims that Defendants interfered with RKA's preexisting contracts with Wehbe and Abbass, all Defendants are clearly third-party strangers. To the extent RKA claims that Defendants interfered with the contracts to have Wehbe and Abbass perform with Snoop specifically, Snoop was a nonstranger because his participation was required. No facts are alleged in the SAC to suggest that Chung and DSM were anything other than strangers to the contracts for Snoop's performance.

Defendants' final argument is that RKA fails to specify exactly how Defendants disrupted the relationship. RKA alleges, however, that Defendants collaborated with Wehbe and Abbass and concealed it from RKA (SAC ¶¶ 16, 18, 19), with either the intent or constructive knowledge that it would disrupt RKA's economic relationships. (*Id.* ¶¶ 42, 49.) Defendants argue that the eventual collaborations contradict RKA's claims, but to the contrary, because they were hidden and RKA was unpaid, they support the claims entirely. Therefore, the Court finds that except as to allegations that Snoop disrupted a contract between RKA and Wehbe or Abbass to have them perform with him, RKA has adequately stated claims for intentional or negligent interference.

D.    **Kalaouz Fails to State a Claim for Violation of Publicity Rights**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-03632-DMG (CWx)** | Date | May 17, 2013 |
|---|---|---|---|

| Title | ***Roger Kalaouz and Associaties s.a.r.l., et al.. v. Calvin Broadus, et al.*** | Page | 7 of 8 |
|---|---|---|---|

In the SAC, Kalaouz adds himself as a new Plaintiff in connection with a new claim for unauthorized use of his likeness in violation of Cal. Civ. Code § 3344, which is asserted against all Defendants. Kalaouz alleges that his image appeared in the music video for "That's Tha Homie," and he never consented to the use of his image to help promote the song and upcoming album. (SAC ¶ 54.)

There are a number of problems with Kalaouz's Section 3344 claim. Kalaouz was not previously named as a plaintiff in this action. (*See* Complaint and FAC [Doc. ## 1, 8].) Federal Rule of Civil Procedure 15(a) allows a party to amend his pleading *once* as a matter of right within 21 days of service of the pleading or within 21 days of service of a responsive pleading or a motion under Rule 12(b), (e), (f). Although the Court's 10/30/12 Order granted Plaintiff RKA leave to amend certain of its substantive claims, the Court did not grant Plaintiff leave to add additional claims not previously asserted or additional parties. Plaintiff may not now add additional parties or claims except by joint stipulation of the parties or with leave of court following a properly noticed motion to amend. Thus, the Section 3344 claim can be dismissed on that basis alone. *See* Fed. R. Civ. P. 15(a)(2). In the interest of judicial economy and to avoid a further motion to amend to add this claim, however, the Court addresses it on its merits.

According to Section 3344 of the California Civil Code, "[a]ny person who knowingly uses another's name . . . or likeness, in any manner, . . . for purposes of advertising or selling . . . goods or services, without such person's prior consent . . . shall be liable for any damages sustained." Defendants argue that the use of Kalaouz's likeness is protected under the First Amendment as an artistic work, and thus must not be the subject of liability under Section 3344.

Defendants' argument stems from a line of cases holding that use of a public figure's likeness in advertising that is "incidental" to a First Amendment protected activity is itself protected by the First Amendment. *See Page v. Something Weird Video*, 960 F. Supp. 1438, 1443 (C.D. Cal. 1996) (finding that a catalogue that generated no profit and only promoted First Amendment protected materials – films –was noncommercial because it was "incidental" to the work being advertised, and thus protected by the First Amendment). When possible, however, courts should avoid the unnecessary resolution of constitutional questions. *See Camreta v. Greene*, ___U.S.___, 131 S. Ct. 2020, 2031, 179 L. Ed. 2d 1118 (2011) ("A longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (quotation marks omitted)). The viability of the Section 3344 claim can be decided without reference to the First Amendment.

Section 3344 is narrower than the common law claim for appropriation. The statute "requires a plaintiff to establish: (1) a 'knowing' use; (2) for purposes of advertising, and (3) a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-03632-DMG (CWx) | Date | May 17, 2013 |
| Title | *Roger Kalaouz and Associaties s.a.r.l., et al.. v. Calvin Broadus, et al.* | Page | 8 of 8 |

direct connection between the use and the commercial purpose." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) (citing *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 198 Cal. Rptr. 342 (1983)). None of these elements are satisfied here. First, Kalaouz has not alleged that Defendants *knowingly* used his likeness. Second, while Kalaouz has alleged that the video was used to advertise Snoop's upcoming album (SAC ¶ 54), he has not alleged that his *likeness* was used for the purpose of advertising. Third and most importantly, Kalaouz has not alleged, and cannot allege, a direct connection between the use of his likeness and the commercial purpose. Indeed, it is not plausible to assume that the image of Roger Kalaouz in the video is intended to boost sales of Snoop's albums. For these reasons, Kalaouz's claim under Civil Code section 3344 is dismissed with prejudice.

### IV.
### CONCLUSION

In light of the foregoing, Defendants' Motion to Dismiss is **GRANTED** as to Kalaouz's claim under Cal. Civ. Code § 3344, and **DENIED** in all other respects. As all of Kalaouz's claims are dismissed, he is dismissed as a party. Defendants shall file an Answer within **21 days** of the date of this order.

**IT IS SO ORDERED.**